STATE ex rel. DONOVAN, Relator, v. DISTRICT
COURT, Respondent.

(No. 1,891.)

(Submitted January 22, 1903.   Decided February 6, 1903.)

*District Courts—Power in Probate Proceedings—Guardian's
Sale—Setting Aside.*

1.  The district court in probate proceedings has only the powers formerly
    held by the probate court as such prior to the adoption of the constitution.
2.  Code of Civil Procedure, Section 2687, provides that if, after confirmation
    of a sale of real estate by an executor or administrator, "the purchaser
    neglects or refuses to comply with the terms of the sale, the court or
    judge may, on motion of the executor or administrator, order a resale," the
    purchaser at the first sale to be liable for any deficiency.   There is no
    other provision in the Code respecting the duties of a district court sitting
    in probate on default of a purchaser to comply with the terms of sale.
    *Held,* that such court had no power to set aside a guardian's sale of the
    property of the ward, and to authorize the guardian to retake possession
    thereof, on the failure of the purchaser to comply with the terms of pur-
    chase.

Application by the state, on the relation of James Donovan,
for a writ of review directed to the district court of the First
judicial district, department No. 2, in and for the county of
Lewis and Clarke.   Heard on return of the district court.   Order
below annulled.

*Mr. F. W. Mettler*, for Relator.

*Mr. Albert J. Galen*, for Respondent.

MR. JUSTICE MILBURN delivered the opinion of the
court.

This cause is before us on the return of the district court to
a writ of review.   From the record it appears that one Sarah
F. Rumney was and is the duly appointed and acting guardian
of the estates of two minors, to-wit, John Jackson and Nettie
Pauline Jackson, who were the owners of a four-ninths interest
in a certain band of cattle numbering about 100, and of a two-
thirds interest in a certain tract of real estate known as the

"Jackson Ranch," situate in Lewis and Clarke county, the cattle being located on the said ranch; that said Sarah F. Rumney was at the time of the sales herein referred to a co-owner in her own right with the said minor heirs in the said real estate, and that she and one Beatrice Jackson Kranich were at said times co-owners in their own several rights with the minor heirs in the said band of cattle; that on the 21st day of January, 1901, the district court duly made its order for the sale of the interests of the minor heirs in the said personal property, and that no return has ever been made to the court of any acts of the guardian in pursuance of the said order of sale. On the 7th day of August, 1902, the court duly ordered said guardian to sell the interest of the said minor heirs in and to the said real estate either at public or private sale, and to the highest and best cash bidder. The guardian reported to the court that she had, pursuant to the order of sale, duly sold at private sale, in accordance with notice duly published, all the real estate belonging to said minors to said James Donovan, he being the highest and best cash bidder therefor, and that the purchase price paid therefor was the sum of $3,333.25; $500 of said amount being paid down, and the balance to be paid after approval and confirmation of the sale. The court, on October 11, 1902, ordered that the said sale be approved, and that proper and legal conveyance of the real estate be executed by the guardian to the purchaser. On the 27th day of October, 1902, the said guardian, by a petition duly filed in the district court, represented that in pursuance of the said order of sale of the personal property she had sold unto said James Donovan 40 head of cows and the calves of the year 1902 for the sum of $35 per head, and 29 head of two-year-old and yearling steers and heifers for the sum of $20 per head,—making a total of $1,920 agreed to be paid for said cattle; and that in pusuance of the order of sale of the real estate she had sold the interests of the minor heirs therein to said James Donovan in manner and form as heretofore stated; and that at the time of the sale of the said realty and of said live stock, "in pursuance of authority vested in your petitioner

by law and authority of this court, said purchaser, James Donovan, paid unto your petitioner the full sum of $2,500, it being then and there understood and agreed by and between the said parties that said payment should apply upon the entire property,—that is, upon both the ranch and the cattle." It appeared in the petition that James Donovan refused, and continued to refuse, "to carry out his part of the contract of purchase, and * * * to accept said realty and cattle, unless the sum of $1,000 be deducted from the price which he undertook, assumed, and agreed to pay for said real estate;" and that said purchaser was then and there in possession of the ranch and cattle, and refused to give up such possession and redeliver the property to the petitioner. She prayed that the court make an order setting aside the sale of the realty and the personal property, and authorizing her to take immediate possession of all of the property in the interests of her wards, and ordering said Donovan to give up possession thereof. After a hearing the court made the order prayed for. The guardian did not appear and testify upon the hearing. Her husband, Benjamin Rumney, testified that he was the agent and manager of all of the property, and that on or about the 5th day of July, 1902, he contracted to sell the whole ranch, including the interests of the co-tenant of the minors, and the cattle, to said Donovan; and it appears from the record that such sale was made, and that Donovan, instead of paying $500 down at the time of any supposed sale, under any order of the court, of said real estate, paid $2,500 down in one sum, in accordance with the contract evidenced in writing, signed by Sarah F. Rumney "individually and as trustee for the estate of John Jackson, deceased, and Benjamin Rumney, her husband, and James Donovan," which contract was supplemented by an instrument in writing, dated July 12, 1902, "between Benjamin Rumney and wife, Sarah F. Rumney, individually and as trustee for minor heirs of John Jackson, deceased, and James Donovan," setting out definitely the number of head of cattle, and providing that said cattle should be and remain on the said ranch until September 1, 1902, until the

second payment was made on the said contract,—that is, $1,-500,—which seems to have been considered as a deferred payment on the ranch, said cattle to remain as security therefor. The contract of July 5th provided that said Donovan should take possession of the real estate upon execution of the agreement, and keep and retain possession and have the full use and benefit thereof until delivery of the deed for said real estate, which deed was to be held by the First National Bank of Great Falls until the completion of the deferred payments on said real estate. As appears by the record, and as stated by counsel of the guardian in his brief, "the entire property has been held and handled in common." As we have stated above, the petition to sell the real estate was dated July 11, 1902; and long before the date of the hearing thereon (August 7, 1902) said Donovan was, in accordance with the terms of said written agreement, put in possession of all of the property, and the $2,500 was paid at some time between the 7th and 15th days of July, 1901,—that is to say, Mr. Donovan was put in possession of all of the property by Benjamin Rumney, the agent of the co-tenants, and not by virtue of any sale confirmed by the district court, or of any sale of any real estate made by order of the court.

The order of the district court canceling the sale of the real estate and of the personal property in this case, and directing the guardian to take possession of all of the real estate and all of the personal property, was without jurisdiction. Section 2687 of the Code of Civil Procedure, referring to real estate, provides that if, after the confirmation, the purchaser neglects or refuses to comply with the terms of sale, the court or judge may, on motion of the executor or administrator, and after notice to the purchaser, order a resale to be made of the property, the purchaser to be liable for any deficiency in case the amount realized on such resale does not cover his bid and the expenses of the previous sale. There is no other provision in the Code respecting the duties of a district court in probate upon default of the purchaser to comply with the terms of sale made by order of the court. As has been frequently said by this court, the dis-

trict court in probate proceedings has only statutory powers, and when the district court succeeded to all of the duties of the probate court upon the abolishment of the latter it acquired only the powers formerly held by the probate court as such prior to the adoption of the constitution. The fact that the judge of the district court sits in probate does not give him any powers not had by the judge of the probate court prior to its abolishment. The power to order a resale under certain conditions is not authority to foreclose a mortgage on cattle to secure the price of land, or to give judgment in ejectment, or to issue a writ in claim and delivery for the recovery of personal property; all of which is attempted to be done in the present case under the order of the district court. The order made and complained of is not an appealable order mentioned in Section 1722, Subsection 3, of the Code of Civil Procedure. The order made is not an order to sell, or to again expose for sale. It is not an order to carry out either or both of the orders of sale made by the court. What remedy either the guardian or Mr. Donovan may have under the circumstances is not proper or necessary for us to indicate. As to the relations of Mr. Donovan with his cotenant, and his rights in the premises under such relations, we make no remark.

The order is annulled.

*Annulled.*